IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WESLEY MITCHELL,

    Plaintiff,               No. 2:11-cv-1240 JAM AC P

    vs.

MATTHEW L. CATE, et al.,         ORDER &

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) defendant Miranda's motion to dismiss (ECF No. 29); (2) the motion to dismiss brought by defendants Clark, Davey, Gower, McDonald, Sanders and Van Leer (ECF No. 30), in which defendant Miranda joins (ECF No. 36); and (3) plaintiff's request for leave to amend (ECF No. 41). Plaintiff opposes the motions to dismiss (ECF No. 41), and defendants have replied to his opposition (ECF No. 46).

        This action proceeds on the original complaint (ECF No. 1). Six defendants have previously been dismissed. See Orders filed December 9, 2011 (ECF No. 17) and March 21, 2012 (ECF No. 31). The seven remaining defendants, movants here, are correctional officers and prison officials at High Desert State Prison (HDSP). Plaintiff alleges that the defendants

violated his constitutional rights in relation to his segregation from the inmate general population and housing in a Special Purpose Segregation Unit (SPSU) from October 6, 2009 through May 26, 2010.  Plaintiff claims that he and others were placed in segregation without notice and a hearing, in violation of due process, during an investigation into inmate gang activity.  (The record before the court reflects the position of prison authorities that plaintiff was not placed "in segregation," but that his housing unit, Facility B, was placed on "modified program" or "lockdown" in response to violence or the threat of violence among inmates.)  Plaintiff claims further that his Eighth Amendment rights were violated during his period of segregation in several ways: (1) by inhumane conditions of confinement including extremely cold temperatures and inadequate clothing, (2) by deprivation of privileges afforded to inmates in general population and to those housed in the Administrative Segregation Unit (ASU) and Security Housing Unit (SHU); (3) by complete deprivation of outdoor exercise; and (4) by inadequate medical care.  Plaintiff also claims that his First Amended rights were violated in two ways: (1) by the denial of access to religious activity; and (2) by interference with his access to the courts.  See ECF No. 1.

**Defendant Miranda's Motion to Dismiss For Failure To State A Claim**

Plaintiff claims that defendant Miranda failed to provide medical care for his severe abdominal pain, thereby prolonging plaintiff's pain and suffering.  Defendant Miranda contends that the facts alleged in the complaint do not support an Eighth Amendment claim against him.  See ECF Nos. 29, 29-1.  Miranda seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), without leave to amend.  Id.   Plaintiff seeks leave to amend.

*Standards Governing the Motion*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901

F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations."

3

1  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

2        A pro se litigant is entitled to notice of the deficiencies in the complaint and an
3  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.
4  See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

5        *Allegations of the Complaint*

6        According to the complaint, defendant Miranda was at all relevant times a
7  physician's assistant (PA) at HDSP. His duties "included providing medical attention to
8  inmates, conducting sick calls, screening medical problems, evaluating requests for
9  appointments with other medical staff, and personally visiting each specialized housing unit at
10 least once weekly," pursuant to 15 Cal. Code Regs. § 3354(e) & (f)(1). ECF No. 1, p. 4.

11       On February 22, 2010, plaintiff submitted a Health Care Service Request Form
12 (CDCR Form 7362) "complaining of excruciating abdominal pain, possible abdominal flu
13 and/or food poisoning resulting in dia[r]rhea." ECF No. 1, p. 18. He was informed that he
14 would be seen by medical staff on March 18, 2010, "which proved to be false." Id. Due to
15 increasing pain from stomach cramps and continuing diarrhea, plaintiff submitted another Form
16 7362 health care request on March 23, 2010. He requested reinstatement of previously ordered
17 medication for Irritable Bowel Syndrome (IBS). Plaintiff was informed that he would be seen by
18 medical staff on March 26, 2010; once again, the visit did not occur. Id. On April 1, 2010 and
19 again on April 10, 2010, plaintiff submitted inmate requests for interviews to the Facility B
20 clinic. These requests indicated that his condition was "severe" and getting worse, and he asked
21 "to be examined by a physician/specialist A.S.A.P." Id. There was no response. Plaintiff then
22 submitted a third Form 7362 request on April 20, 2010, seeking prompt access to medical
23 attention and "unequivocally conveying his continued bouts of chronic persisting and severe
24 stomach pains, cramps" and diarrhea. Plaintiff was finally examined by defendant Clark, a
25 registered nurse, on April 28, 2010. Id. at 18-19. On April 30, 2010, plaintiff received
26 prescription fiber tablets which he took for two days. Plaintiff's IBS symptons worsened after he

4

took the fiber tablets. Id. at 19.

With regard to these incidents, plaintiff alleges in general terms that "defendants Miranda and Clark were responsible for the timely provision of plaintiff's medical care and for ensuring that as an inmate under their care, he was made readily available to adequate, timely and efficient medical care." Id. at 19. Plaintiff also claims that "these defendants" were aware of his "wanton suffering" but despite their "constitutional obligations" to treat his "preventable sufferings and pain . . . sat by idly refusing to come to his aid and for some eleven weeks during which he suffered unbearable, excruciating and at times paralyzing pains before responding adequately." Id. He also references "[c]ertain unidentified Does" who shared a duty to treat his "preventable suffering." Id.

*Legal Principles Governing Claims of Inadequate Medical Care*

There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an

injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

The failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). However, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Finally, petitioner must show harm from defendants' deliberate indifference to his serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Akhtar v. Mesa, 698 F.3d 1202, 1213-14 (9th Cir. 2012). The prisoner need not show his harm was substantial. Jett, 439 F.3d at 1096.

*Analysis*

Defendant Miranda argues, and plaintiff concedes, that the complaint does not state facts sufficient to establish that defendant Miranda was aware of plaintiff's serious medical need and deliberately disregarded it. Plaintiff's allegations regarding his abdominal pain and IBS, and his requests for treatment, do not specifically reference Miranda. The complaint does not allege that plaintiff sought medical care from or interacted with Miranda. No facts are alleged that might explain how Miranda would have been aware of plaintiff's situation. Plaintiff's allegation that Miranda was aware of his suffering is entirely conclusory. There are no allegations regarding Miranda's involvement in any particular decisions about plaintiff's care and treatment, or other specific allegations of wrongdoing.

Moreover, the complaint does not allege what further harm, if any, plaintiff suffered as the result of the alleged failure to properly treat his abdominal pain and underlying condition while he was in segregation. Plaintiff does not appear to allege any lasting gastro-intestinal damage from the denial of treatment. Preventable and severe pain and suffering can, under some circumstances, constitute harm sufficient to support Eighth Amendment liability. See McGuckin v. Smith, 974 F.2d 1050, 1059-60, 1062 (9th Cir. 1992). Plaintiff does not explain, however, how his pain might have been alleviated while he was in segregation, how long the abdominal episode continued after his release from segregation, or what treatment if any he received after May 26, 2010.

For all these reasons, the complaint does not contain sufficient "factual matter" to state a viable Eighth Amendment claim against Miranda. See Iqbal, 556 U.S. at 678. In response to the motion, plaintiff acknowledges that the claim is deficiently pled. Plaintiff nonetheless asks that the motion to dismiss be denied, and seeks leave to amend.

Because the complaint fails to allege facts affirmatively linking defendant Miranda's actions to the claimed deprivation, see Johnson v. Duffy, supra, 588 F.2d at 743, the motion to dismiss must be granted. However, the undersigned will recommend that plaintiff be

1  granted leave to amend his claim of constitutionally deficient medical care.  See Eminence
2  Capital LLC v. Aspeon Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003) (leave to amend should be
3  liberally granted).

4  　　　　　The record does not demonstrate undue delay or bad faith on petitioner's part,
5  which would weigh against amendment.  See California Architectural Bldg. Prod. v. Franciscan
6  Ceramics, 818 F.2d 1466, 1472 (9th Cir.1988) (reviewing valid reasons for denying leave to
7  amend).  In deciding whether to permit amendment, prejudice to defendants is the most
8  important consideration.  Eminence Capital, 316 F.3d at 1052.  No prejudice is apparent here.
9  Defendant Miranda is on notice of the substance of the claim, and amendment will not
10 significantly delay the proceedings.  Finally, this is not a case in which amendment is necessarily
11 futile.  See Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293
12 (9th Cir.1983) (holding that, while leave to amend shall be freely given, the court need not allow
13 futile amendments).  "Unless it is absolutely clear that no amendment can cure the defect . . . , a
14 pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend
15 prior to dismissal of the action."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per
16 curiam).  Because the defects identified above could possibly be cured by the pleading of
17 additional facts, leave to amend should be granted.

18 　　　　　Because leave to amend is recommended in relation to disposition of the motion
19 to dismiss, petitioner's request for leave to amend – to the extent it constitutes a free-standing
20 motion[1] – will be denied as duplicative.

---

[1] Plaintiff's response to defendants' motion was captioned, "Notice Of Motion To Deny Defendants Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6) And To Allow Plaintiff To Amend His Complaint."  The response was docketed as an Opposition to the Motion to Dismiss and a Motion to Amend the complaint.  ECF No. 41.  The contents of the document, including the request for leave to amend, are responsive to the contents of the Motion (ECF No. 30).  Accordingly, the designation in part of ECF No. 41as an independent motion appears to have been in error.

**Motion to Dismiss For Failure To Exhaust**

Defendants move for dismissal of the complaint in its entirety under Rule 12(b), on the ground that plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C.§ 1997e(a).  See ECF Nos. 30, 30-1.

*The Exhaustion Requirement*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Regardless of the relief sought, whether injunctive relief or money damages, inmates must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999); Booth v. Churner, 532 U.S. 731 (2001). Administrative remedies must be exhausted before the complaint is filed.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010) (PLRA exhaustion requirement satisfied with respect to new claims within an amended or supplemental complaint so long as administrative remedies are exhausted prior to the filing of the amended or supplemental complaint).

Exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81 (2006).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Id. at 84.  When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable."  Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010).

Exhaustion may be excused where administrative remedies are effectively unavailable, see Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010), or where exhaustion would be futile, see Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).

Although CDCR's administrative exhaustion procedure has been modified since

9

the events at issue here, the prison appeal system in place at the time of plaintiff's segregation included four levels. In order to exhaust, an inmate must proceed through the following levels of review: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing 15 Cal. Code Regs. § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

*Standards Governing the Motion*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving the absence of exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, and plaintiff must be provided with notice of his opportunity to develop a record. Id. at 1120 n.14.[2] The court may decide disputed issues of fact. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy. Id. at 1120.

*Analysis*

Inmate Appeal Regarding Medical Care

In their motion, defendants acknowledge that plaintiff initiated a grievance regarding the failure to treat his IBS while he was in segregation, but assert that this grievance was never exhausted. ECF No. 30-1 at 4, 6. Defendants provide the declaration of Health Care Appeals Coordinator D. Frazier, with attachments that include inmate appeal Log No. HDSP-31-10-11286, a First Level Response, and a Second Level Response. ECF No. 30-4. The moving papers affirmatively represent that plaintiff failed to file the subsequent Third Level appeal

---

[2] This court provided plaintiff with Wyatt notice on November 22, 2011, and again on July 13, 2012. ECF Nos. 15, 39.

necessary to exhaust the claim. ECF No. 30-1 at 6. Plaintiff, however, submitted with his opposition to the motion a Third Level Response to Appeal Log No. HDSP-31-10-11286. ECF No. 41, Attachment 4. On reply, defendants concede exhaustion of the medical care claim, ECF No. 46 at 2, 5, but offer no explanation for their previous misstatement of the relevant facts. As plaintiff's exhaustion of the medical care claim is now undisputed, the motion should be denied as to that claim.

<u>Inmate Appeal Regarding Placement and Conditions in Segregation</u>

Defendants contend that plaintiff's due process claims involving his placement in segregation, and his First and Eighth Amendment claims going to the conditions of confinement in segregation (or pursuant to modified program), are all unexhausted. Defendants report that two inmate appeals were submitted by plaintiff on November 9, 2009 and January 15, 2010, both of which challenged aspects of plaintiff's "modified program" and both of which were screened out for procedural reasons. The November 9, 2009 appeal was rejected as untimely, and the January 15, 2010 appeal was rejected as duplicative. ECF No. 30-3. Defendants argue that plaintiff's failure to timely challenge his segregation (or modified program) and pursue such appeal through the Director's Level renders his claims unexhausted.[3]

Plaintiff forwards an exhaustion theory based on his participation in a "group appeal" submitted by inmate Anthony Martinez and exhausted on August 19, 2010. As previously noted, the complaint states that plaintiff was one of several inmates placed in segregation without notice and an opportunity to he heard, and held thereafter in special segregation status without the safeguards and minimum privileges afforded to inmates in ASU and SHU, during investigation of inmate gang activity.

---

[3] Plaintiff did exhaust an appeal regarding one narrow aspect of his segregation: loss of canteen privileges. ECF. No. 30-3. Plaintiff's complaint does not base a claim for relief on the denial of canteen privileges, but does allege the lack of access to canteen as one of many relevant conditions of his segregation. ECF No. 1 at 15, ¶ 118. Denial of canteen access could be relevant to the claim that defendants deprived plaintiff of toiletries necessary to basic hygiene, which is an aspect of the alleged Eighth Amendment violation. See ECF No. 1 at 20, ¶ 153.

11

The applicable regulation provides that a single appeal may be filed on behalf of a group of inmates who wish to "appeal a policy, decision, action, condition or omission affecting all members of the group." 15 Cal. Code Regs. §3084.2(h).[4] The appeal must indicate the identity of the inmate preparing the appeal, and include the identifying information and signatures of all participating inmates on a separate sheet. Responses to the appeal are provided to the inmate who prepared it, who is responsible for communicating the results to the other participating inmates. Participating inmates are ineligible to submit individual appeals on the same issue. 15 Cal. Code Regs. §3084.2(h) (1), (2), (5).

To demonstrate exhaustion, plaintiff provides (1) a copy of the handwritten duplicate he made of the Martinez group appeal, which comprehensively challenged the modified lock-down;[5] (2) his own sworn declaration that he joined the group appeal as a signatory when the appeal was first submitted in January, 2010; and (3) two letters that he received from the Chief of the Inmate Appeals Branch of CDCR in response to his written inquiries about the status of the group appeal. Both of those letters, dated June 29, 2010 and August 26, 2010, refer to the Martinez appeal as a group appeal. Neither letter disputes plaintiff's claim to be part of the inmate group covered by the Martinez appeal. Both letters direct plaintiff to obtain information about disposition of the group appeal from Martinez as provided by the group appeal rules. ECF No. 41, Decl. Of Wesley Mitchell at 2 & Attachments 1-3.

Defendants acknowledge that inmate Martinez exhausted his appeal, but contend that it was not "processed" as a group appeal and therefore failed to exhaust plaintiff's administrative remedies. See ECF No. 46-2, Decl. of D. Clark at 2. In reply to plaintiff's opposition, defendants produce a copy of the appeal packet submitted by Martinez to the Third

---

[4] Formerly §3084.2(f).

[5] The undersigned has compared this hand-copied version against the original, which has been provided by defendants, and confirmed its accuracy.

12

1  Level of Review. ECF No. 46-1. This packet includes a document bearing the signatures and
2  identifying information of plaintiff and another inmate, and asserting their status as group
3  appellants under the applicable regulation. Id. at 9. According to the declaration of Appeals
4  Coordinator D. Clark, this signature page was submitted at the Third Level of Review, but not at
5  the First or Second Level of Review. ECF No. 46-2 at 2. The date of submission is not apparent
6  on the face of the signature page. ECF No. 46-1 at 9.[6] Defendants argue that plaintiff's failure
7  to join the Martinez appeal at the lower levels of review, and the fact that the appeal was not
8  "accepted" or "processed" as a group appeal at the Third Level, defeats exhaustion.

9  Defendants' showing of non-exhaustion fails persuade. An ambiguous
10 documentary record will not satisfy defendants' burden of proving exhaustion. See Wyatt, 315
11 F.3d at 1120. Plaintiff has submitted a declaration averring that he joined the group appeal at its
12 inception. The documents submitted by defendants fail to establish otherwise. The Martinez
13 group appeal signature page does not disclose on its face when or with which appeal packet it
14 was first submitted. See Wyatt, 315 F.3d at 1120 (finding ambiguous documentary record
15 inadequate to prove non-exhaustion). Defendant's representation that the page was submitted
16 only at the third level cannot be credited in light of defendants' misstatement of the exhaustion
17 record regarding plaintiff's appeal of his medical care claim. Although the undersigned does not
18 impute any bad faith to defendants' declarants, the completeness of the institution's inmate
19 appeal records simply cannot be trusted on the record before the court. Accordingly, the
20 representation that record searches did not reveal a copy of the signature page attached to the
21 first or second level appeals will not be accepted as conclusive evidence that the signatures were
22 not submitted, in light of other evidence supporting plaintiff's allegations regarding exhaustion.

---

[6] Defendants provide a copy of the appeal packet submitted by Mr. Martinez to the Third Level of Review. ECF No. 46-1 (Defendants' Ex. A); see also ECF No. 46-2 (Decl. Of D. Clark) (identifying Exhibit A). This packet includes the appeals and responses from the First and Second Levels. Defendants do not, however, separately document that the appeal packet as provided to those levels omitted the group appeal participants signature page.

13

1          Defendants' present contention that the Martinez appeal was not processed at the
2  Director's Level as a group appeal is contradicted by official correspondence with plaintiff
3  regarding the status of the appeal.  In the letter dated June 29, 2010, the Chief of the Inmate
4  Appeals Branch (IAB) informed plaintiff that "[t]he records maintained by the IAB reflect that
5  the above cited group appeal submitted by Inmate Martinez was accepted on May 10, 2010;
6  however, the comprehensive examination of the appeal has not yet been completed."  ECF No. 4
7  at 14.  The August 26, 2010 letter stated, "The records maintained by the IAB reflect that the
8  above cited group appeal submitted by Inmate Martinez was accepted on May 10, 2010; and
9  after a comprehensive examination the appeal was denied on August 19, 2010."  Id. at 17.  Both
10 letters reproduced the rules applicable to group appeals, and advised plaintiff that under these
11 rules he could only receive a copy of the Director's Level Decision from Martinez.  These letters
12 support plaintiff's contention that the Martinez appeal was considered as a group appeal.

13         Defendants argue that the circumstances here are "identical" to those in Ashker v.
14 Schwarzenegger, 2007 WL 1725417 *6 (N.D. Cal. 2007), in which the district court found that a
15 putative group appeal exhausted claims only as to the inmate who prepared it.  In that case, the
16 appeal announced its submission "on behalf of Ashker and Troxell" but failed to provide the list
17 of participating inmates' names, signatures, inmate numbers and housing locations required by
18 the applicable regulation.  Id.  In this case, the record of the Martinez appeal contains the
19 required list, including plaintiff's signature and information.  ECF No. 46-1 at 9.  The parties
20 here dispute whether that list was provided from the initiation of the appeal or added only at the
21 final stage, and the undersigned has concluded that defendants have failed to meet their burden
22 of proof on that point.  Accordingly, Ashker is inapposite.

23         Defendants also emphasize that in Ashker, as here, the official responses to the
24 putative group appeal were directed to the submitting inmate as an individual without any
25 reference to a group appeal.  The Ashker court noted that this put plaintiffs on notice that the
26 appeal was limited to Ashker and did not exhaust as to Troxell.  Ashker, 2007 WL 1725417 *6.

14

1   This case is different. Even though the written responses to Martinez failed to note that the
2   appeal had been submitted on behalf of a group, the IAB's communications *with plaintiff*
3   referred to it explicitly as a group appeal. Not only was plaintiff here denied the notice of non-
4   exhaustion that the court found persuasive in Ashker, he was affirmatively told – whether
5   correctly or incorrectly – that the Martinez appeal *was* a group appeal. In effect, the IAB assured
6   plaintiff that he was in the process of exhausting. The facts here could hardly be farther from
7   "identical" to those in Ashker.

8   Defendants also cite an unpublished Ninth Circuit case, Shirley v. Tuggle, 331
9   Fed. Appx. 484, 485 (9th Cir. 2009), involving a putative group appeal. In Shirley, the
10  defendants had produced a declaration from the prison appeals coordinator stating that the appeal
11  had not been classified as a group appeal. The district court accordingly found that the appeal
12  had not exhausted the claims of a participating inmate. The Court of Appeals vacated and
13  remanded because the Formal Response to the appeal referred to the "inmates" and "workers"
14  affected by the issue, suggesting that the appeal did cover a group. Shirley does not support
15  defendants' non-exhaustion theory here. The Shirley opinion does not say, and the Ninth Circuit
16  has never held, that an appeal intended as a group appeal does not exhaust remedies as to
17  participating inmates *unless* the written response to the appeal so specifies. Rather, the appellate
18  court in Shirley identified facts in the record before it that suggested a reviewing entity had
19  considered the appeal a group appeal. Such facts exist in the record of this case too. In Shirley
20  the relevant facts were found in the Formal Response to the appeal, and here they are found in
21  the IAB's letters to plaintiff. In both cases, those facts contradict the defendants' representation
22  that the appeal had not been classified as a group appeal.

23  Finally, defendants argue that even if the Martinez appeal had proceeded as a
24  group appeal, it would have been untimely as to plaintiff and therefore ineffective to exhaust.
25  This argument fails in light of 15 Cal Code Regs. §3084.6(c)(4), which states in relevant part:
26  In determining whether the time limit has been exceeded, the

15

> appeals coordinator shall consider whether the issue being appealed occurred on a specific date or is ongoing. If the issue is ongoing, which may include but is not limited to, continuing lockdowns, retention in segregated housing, or an ongoing program closure, the inmate or parolee may appeal any time during the duration of the event; however, the inmate or parolee is precluded from filing another appeal on the same issue unless a change in circumstances creates a new issue.

Plaintiff alleges violations of his constitutional rights in relation to a lockdown, retention in segregation, and/or ongoing program restrictions. Accordingly, the complaint involves ongoing issues that were subject to administrative appeal throughout his period of segregation and/or program modification. Accordingly, the group appeal was not untimely as to plaintiff.[7]

Even if the Martinez appeal was not classified as a group appeal, the IAB letters mistakenly referring to it as such would undercut defendants' position on exhaustion. Exhaustion may be excused where an inmate takes reasonable and appropriate steps to exhaust his claim, and is precluded from exhausting by a mistake on the part of prison authorities. Nunez, 591 F.3d at 1224. The letters plaintiff received from the IAB effectively endorsed his belief that a group appeal was pending that would exhaust his administrative remedies. Because participants in group appeals are barred from filing individual appeals, plaintiff's belief that he was so barred was entirely reasonable.

Like the plaintiff in Nunez, plaintiff here put prison officials on notice of his claims. See id. at 1224-25. In addition to his attempted joinder in inmate Martinez's comprehensive challenge to conditions, and his letters to the IAB regarding the group appeal, plaintiff individually challenged specific aspects of the lockdown. For example, plaintiff's

---

[7] For the same reason, the rejection of plaintiff's November 9, 2009 individual appeal as untimely may have been improper. If so, the matters addressed in that appeal would be excused from exhaustion. See Sapp, 623 F.3d at 823 (exhaustion excused where improperly rejected on procedural grounds). It is impossible to determine what issue(s) plaintiff was trying to exhaust in his November 9, 2009 appeal, however, as defendants do not provide it. The Declaration of D. Clark, HDSP Appeals Coordinator, discusses the rejection of this appeal as untimely, but the attachments do not include a copy of a Form 602 dated November 9, 2009. ECF No. 30-3.

16

1    exhausted appeal regarding canteen privileges involved one of the restrictions imposed as part of
2    the overall "program modification."  In pursuing that appeal through all levels of review,
3    plaintiff challenged the factual basis for the entire regime of restrictions and their application to
4    him, and sought copies of the institutional Program Status Reports that specified the restrictions
5    imposed.  See ECF No. 30-2 at 9, 10-11, 19.  Plaintiff's responses to previous appeal screening
6    orders further demonstrate that he was attempting to challenge multiple aspects of the
7    restrictions.  Id. at 22, 24 (arguing that screened out appeals were not duplicative because they
8    challenged different aspects of the restrictions).  Considered as a whole, these efforts
9    demonstrate both reasonable steps to exhaust and actual notice to prison officials of plaintiff's
10   claims.  Because plaintiff was encouraged by the authorities to believe that he was in fact a
11   participant in a group appeal that was being reviewed on the merits at the highest level, any non-
12   exhaustion should be excused.

13           For all the reasons set forth above, the undersigned concludes (1) that defendants
14   have not satisfied their burden of proving non-exhaustion as to the matters included in the
15   putative group appeal, and (2) in the alternative, that plaintiff should be excused from exhausting
16   the claims presented by inmate Martinez in HDSP Appeal No. 10-00102.  The group appeal
17   encompassed most of the issues presented as grounds for relief in plaintiff's complaint:
18   segregation without notice or hearing; continued segregation without periodic review;
19   deprivation of privileges provided to inmates in other segregated housing units (phone access,
20   visits, canteen, etc.); deprivation of outdoor exercise; lack of access to religious participation;
21   and obstructed access to the courts.  The motion to dismiss for non-exhaustion should be denied
22   as to these claims.

23           The Martinez appeal did not, however, raise the issue of unsafe conditions of
24   confinement such as severe cold and lack of adequate clothing.  See ECF No. 46-1.  Plaintiff has
25   made no showing that grievances regarding temperature and clothing were administratively
26   exhausted.  The only evidence before the court on that issue is the declarations of the HDSP

1 Appeals Coordinator and the Chief of the IAB that review of all plaintiff's appeals reveals no
2 grievances presenting those issues.  ECF Nos. 30-2, 30-3.  Because the declarations are
3 uncontroverted on that point, they will be accepted.  The motion to dismiss for non-exhaustion
4 should be granted as to the claim that the Eighth Amendment was violated by exposure to severe
5 cold and inadequate clothing.

6       Accordingly, IT IS ORDERED that plaintiff's Motion to Amend (ECF No. 41) is
7 denied without prejudice as duplicative of matters in issue on defendants' motion.

8       IT IS RECOMMENDED that:

9       1. Defendant Miranda's motion to dismiss under Rule 12(b)(6) (ECF No. 29) be
10 granted without prejudice to amendment and, upon adoption of these recommendations should
11 that occur, plaintiff be granted twenty-eight days to file an amended complaint;

12       2. Defendants' motion to dismiss for failure to exhaust administrative remedies
13 (ECF No. 30) be granted as to the claim that plaintiff's Eighth Amendment rights were violated
14 by exposure to extreme cold without adequate clothing and/or linens (ECF No. 1 at 20, ¶ 152),
15 and denied as to all other claims.

16       These findings and recommendations are submitted to the United States District
17 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
18 days after being served with these findings and recommendations, any party may file written
19 objections with the court and serve a copy on all parties.  Such a document should be captioned
20 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
21 shall be served and filed within fourteen days after service of the objections.  The parties are
22 advised that failure to file objections within the specified time may waive the right to appeal the
23 /////
24 /////
25 /////
26 /////

District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 19, 2013.

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
mitc1240.mtd+