1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WESLEY MITCHELL,                              No.  2:11-cv-1240 JAM AC P

12                  Plaintiff,

13        v.                                       FINDINGS AND RECOMMENDATIONS

14   MATTHEW L. CATE, et al.,

15                  Defendants.

16

17        Plaintiff is prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Pending before the court is plaintiff's motion for summary judgment.  The

19   motion has been fully briefed.  For the reasons explained below, the court finds that plaintiff has

20   not met the heavy burden of establishing that the undisputed facts entitle him to summary

21   judgment.

22                             PLAINTIFF'S ALLEGATIONS

23        This action proceeds against defendants Clark, Davey, Gower, McDonald, Sanders and

24   Van Leer, all of whom are correctional officers and prison officials at High Desert State Prison

25   (HDSP).[1]  Plaintiff alleges that his constitutional rights were violated by his segregation from the

26   inmate general population from October 6, 2009 until May 26, 2010.  More specifically, plaintiff

27   _____

28   [1] Several defendants and claims have been dismissed from the original complaint.  See ECF Nos.
     17, 31, 49, 52.

1

1 alleges that he was placed in punitive administrative segregation in violation of due process,

2 without notice or hearing, and thereafter confined in segregation without periodic review, during

3 an investigation into inmate gang activity.  Plaintiff had committed no infraction and had not been

4 involved in any violent incident.  He eventually learned from the response to a group inmate

5 appeal that he was being segregated as a result of an investigation into his alleged membership in

6 a prison gang or disruptive group known as "Two-Five," and because he was alleged to have been

7 involved in an incident of inmate violence on September 17, 2009 as well as in incidents on other

8 (unspecified) dates against staff.  Plaintiff claims further that his Eighth Amendment rights were

9 violated during his period of segregation in several ways: (1) by deprivation of privileges

10 afforded to inmates in general population and to those housed in the Administrative Segregation

11 Unit (ASU) and Security Housing Unit (SHU) (phone access, visits, canteen, etc.); (2) by

12 complete deprivation of outdoor exercise; and (3) by inadequate medical care.  Plaintiff also

13 claims that his First Amendment rights were violated in two ways: (1) by the denial of access to

14 religious activity; and (2) by interference with his access to the courts.  See Complaint, ECF No.

15 1.

16                         MOTION FOR SUMMARY JUDGMENT

17         In his notice of motion, plaintiff contends that undisputed facts prove defendants Davey,

18 Gower, McDonald, Sanders and Van Leer violated his due process rights by segregating him

19 without notice and an opportunity to present evidence favorable to himself; denied him yard

20 exercise during the unconstitutional segregation; and denied him his right to "reasonably"

21 practice his religion.  Further, he argues that defendant Clark was deliberately indifferent to his

22 serious medical needs because plaintiff had to submit numerous medical requests over a two-

23 month period in order to be evaluated.  ECF No. 64 at 1-2.  Plaintiff's memorandum in support of

24 the motion focuses on the arguments that (1) that his segregation violated his procedural due

25 process rights, and (2) defendant Clark was deliberately indifferent to his serious medical needs in

26 violation of the Eighth Amendment.  ECF No. 64-1 at 1-15.  Accordingly, plaintiff's motion is

27 essentially one for partial adjudication, because he does not move for summary judgment under

28 the Eighth Amendment on the basis of his having been deprived of outdoor exercise for an

1    extended period of time, nor does he seek judgment in his favor regarding limitations placed on

2    his ability to practice his religion in violation of his First Amendment rights.  The outdoor

3    exercise and religious limitations are presented here as examples of the atypical and significant

4    hardships that plaintiff experienced as the result of his segregation, not as freestanding grounds

5    for relief.

6          Defendant prison authorities contend that plaintiff was not placed "in segregation," but

7    that his housing unit, Facility B, was placed on "modified program" or "lockdown" in response to

8    violence or the threat of violence among inmates.  Defendants oppose the motion on grounds that

9    defendant had no liberty interest in remaining free from the increased restrictions imposed during

10   a modified program.  ECF No. 67.  Additionally, they contend that defendant Clark responded to

11   plaintiff's medical concerns and provided appropriate care in accordance with his nursing license.

12   Id.

13   I.      Legal Standards for Rule 56 Motions

14         Summary judgment is appropriate when it is demonstrated that the standard set forth in

15   Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

16   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

17   judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

18         Under summary judgment practice, the moving party "initially bears the burden of

19   proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation,

20   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986)).

21   The moving party may accomplish this by "citing to particular parts of materials in the record,

22   including depositions, documents, electronically stored information, affidavits or declarations,

23   stipulations (including those made for purposes of the motion only), admission, interrogatory

24   answers, or other materials" or by showing that such materials "do not establish the absence or

25   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

26

27   _____

     [2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
     However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28   standard for granting summary judgment remains unchanged."

1    support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

2    of proof at trial, "the moving party need only prove that there is an absence of evidence to support

3    the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.);

4    see also Fed.R.Civ.P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate

5    time for discovery and upon motion, against a party who fails to make a showing sufficient to

6    establish the existence of an element essential to that party's case, and on which that party will

7    bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof

8    concerning an essential element of the nonmoving party's case necessarily renders all other facts

9    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10   whatever is before the district court demonstrates that the standard for entry of summary

11   judgment . . . is satisfied." Id. at 323.

12        If the moving party meets its initial responsibility, the burden then shifts to the opposing

13   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

14   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

15   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

16   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

17   admissible discovery material, in support of its contention that the dispute exists.  See

18   Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate

19   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

20   the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

21   Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987), and that the

22   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

23   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.1987).

24   In the endeavor to establish the existence of a factual dispute, the opposing party need not

25   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

26   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

27   trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

28   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

1  Matsushita, 475 U.S. at 587 (citations omitted).

2       In this instance it is plaintiff, the moving party, who bears the burden of proof at trial.  In

3  these circumstances, the movant "must present compelling evidence in order to obtain summary

4  judgment in [his] favor."  Flores v. City of San Gabriel, 2013 WL 5817507 (C.D. Cal. Oct. 29,

5  2013).  Summary judgment cannot be obtained unless the moving party presents "evidence so

6  compelling that no rational jury would fail to award judgment for the moving party."  United

7  States v. One Residential Prop. Located at 8110 E. Mohave Rd., Paradise Valley, AZ, 229 F.

8  Supp. 2d 1046, 1047-48 (S.D. Cal. 2002) (citing Torres Vargas v. Santiago Cummings, 149 F.3d

9  29, 35 (1st Cir.1998) ("The party who has the burden of proof on a dispositive issue cannot attain

10 summary judgment unless the evidence that he provides on that issue is conclusive.") (citing in

11 turn Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986) ("[I]f the movant bears the

12 burden of proof on an issue… he must establish beyond peradventure *all* of the essential elements

13 of the claim or defense to warrant judgment in his favor")).  If the moving party does not

14 discharge this initial burden, summary judgment must be denied and the court need not consider

15 the non-moving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

16      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

17 court draws "all reasonable inferences supported by the evidence in favor of the non-moving

18 party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

19 the opposing party's obligation to produce a factual predicate from which the inference may be

20 drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D.Cal.1985), aff'd,

21 810 F.2d 898, 902 (9th Cir.1987).  Finally, to demonstrate a genuine issue, the opposing party

22 "must do more than simply show that there is some metaphysical doubt as to the material facts....

23 Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

24 party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).]

25 II.    Due Proecess Claim: Defendants  Davey, Gower, McDonald, Sanders and Van Leer

26         A.  Undisputed Facts

27      The record reveals the following "undisputed facts" set forth by plaintiff to be expressly

28 undisputed by defendants.  The court has also noted additional facts, which are not in dispute,

from evidence presented as part of plaintiff's motion:

- Plaintiff was incarcerated at HDSP during the segregation or "modified program" period at issue herein.

- Plaintiff was not placed in any of the categories listed in the Department Operations Manual §§52070.18-52070.18.5.[3]

- Plaintiff did not receive a Rules Violation Report that resulted in his segregation from October 6, 2009 to May 26, 2010.

- A memorandum dated October 20, 2009 addressed to defendant Warden McDonald stated that on September 17, 2009 during morning yard activities on Facility B, a number of inmates attempted to murder other inmates in two violent attacks that occurred at the same time on opposite ends of the yard. Plaintiff's Exhibit C, Motion for Summary Judgment (MSJ), ECF No. 64-2 at 13, Memorandum with subject line: "Request for Resumption of Normal Program for Non '2-5' Inmates on Facility B."

- Facility B was placed on modified program in order for an investigation to be conducted to ascertain the reason for the attacks, during which:

> [S]taff received confidential information from multiple sources that indicated that the attacks were planned by the disruptive group known as the "2 5's" and that the attacks were planned to occur at exactly the same time at the opposite ends of the yard. Additionally, staff received confidential information from multiple sources that the inmates associated with the disruptive group known as the "2 5's" would continue to attack inmates that they have identified as "child molesters" or "rapists" every time the yard returned to normal program until they, the "2 5's," were transferred to another institution.
>
> Id.

- The memorandum also sets forth that inmates that could be identified as members of the disruptive group "2 5" would be moved to C Section of Facility B's Building 2 "and isolated from the remainder of the Facility B inmate population." Id.

- Facility B Supervisors, according to the memorandum, had contacted the IGI (institutional gang investigation) unit and after "a thorough review" of the documentation they received

---

[3] These DOM sections categorize gang involvement.

found that 33 HDSP inmates were documented as known members of the "2 5's," three of whom were then housed in administrative segregation.  The thirty other inmates all of whom were housed on Facility B were moved to Building 2, C section.  Id.

- Plaintiff points out that the October 20 2009 memorandum dated also stated:

> Interviews of the remaining inmate population on Facility B were then conducted and the remainder of the inmate population was afforded the opportunity to identify any inmates that they believed were members of the disruptive group known as the "2-5's" that had not been identified by staff. Facility B staff has reviewed the central files and the property of all of the inmates identified by the interviews and an additional four (4) inmates were moved to Building 2, C Section.

Id.

However, notwithstanding the above, more than four inmates were moved to Building 2, C Section.

- Plaintiff exhausted an administrative appeal of his due process claims against defendants.
- The building plaintiff was housed in had previously been an administrative segregation (ad-seg) building with separate ad-seg areas used for outdoor exercise.
- Plaintiff was denied access to yard/exercise activities from October 6, 2009 to May 28, 2010.
- Plaintiff remained disciplinary free during the time period relevant to his claims, from October 6, 2009 until May 26, 2010.
- Plaintiff was encouraged to sign a chrono stating that he would not participate in any disruptive group behavior.  MSJ, Ex. G, ECF No. 64-2 at 94.
- On the Inmate Property Inventory form for plaintiff, dated October 6, 2009, under "Reason for Inventory" is stated "Investigation."   MSJ, Ex. H, ECF No. 64-2 at 96.
- Plaintiff never received any CDCR 1030's indicating that any confidential information against him had been obtained.
- But for the appeals process, plaintiff was never afforded the opportunity to challenge his housing between October 6, 2009 to May 26, 2010.
- The names of defendants Davey, Gower, McDonald and Van Leer appear on the

7

memoranda generated at HDSP by Facility B staff giving updates and pertinent information on the segregated inmates.  MSJ, Ex. C, ECF No. 64-2 at 13-56.  Defendants acknowledged their participation by affixing their signatures on the names.

- Defendant Gower was made aware of plaintiff's concerns when plaintiff's 602 was responded to by his office.

B. Facts in Dispute

- Plaintiff did not receive written notice, oversight of his segregation, Institutional Classification Committee hearings, oversight by a Classification Staff Representative, an assigned Investigative Employee, or staff assistance.  MSJ, ECF 64-2 at 2, PUF (plaintiff's undisputed fact) No. 6, Ex. D, ECF No. 64-2 at 58-66, January 24, 2010 administrative appeal.  Defendants assert that plaintiff was provided notice and information regarding the modified program through Program Status Reports, through the inmate appeals process, and through the Inmate's Advisory Council.  Opposition, ECF No. 67-5, Declaration of M. McDonald[4] ¶ 31; MSJ, Ex. I, ECF No. 64-2 at 101, plaintiff's Deposition, 18:3-8; Ex. F, ECF No. 64-2 at 91, January 4, 2010 Inmate's Advisory Council Memorandum.

- Plaintiff contends that defendants Davey, Gower, McDonald, Sanders and Van Leer conceded that plaintiff was segregated.  MSJ, ECF No. 64-2 at 2, PUF No. 11; ECF No. 64-2 at at99-100, plaintiff's Dep. at 16.  While these defendants admit that plaintiff was placed in B-Facility, Building 2, Section C with other inmates identified as being members of the "Two-Five" disruptive group as part of a modified program, they argue that he was not placed in administrative segregation.  Opp., ECF No. 67-2 at 4, response to PUF No. 11, citing MSJ, Ex. G, ECF No. 64-2 at 94, unlock chrono dated May 24, 2010—the chrono refers to plaintiff as an inmate being considered for release from lockdown status.[5]

---

[4] M. McDonald served as Acting Warden at HDSP during the period relevant for this action and as Warden from December 2010 until retirement in December 2012.  ECF No. 67-5, McDonald Dec. ¶ 1.

[5] The "unlock agreement" with plaintiff's signature states in part: "On October 6, 2009 members

- Plaintiff avers that he has never been involved in a prison gang. MSJ, 3-ECF No. 64-2 at 3, PUF No. 13, citing ECF No. 64-2 at 100, Ex. I, plaintiff's Dep. 16:22-23. Defendants argue that plaintiff was identified by a confidential informant as being a member or associate of the "Two-Five" gang. Confidential Memorandum, ECF No. 92 (filed under seal).[6] Plaintiff contends that he was re-housed under conditions that were actually more punitive than ad seg and was not provided a lock-up order or information informing him why he was being investigated. He also states he was not able to challenge the reasons he was being placed in a special secure unit. MSJ, ECF No. 64-2 at 3, PUF No. 17, ECF No. 64-2 at 103, plaintiff's Dep. 28:5-17. Defendants' position is that plaintiff's placement on modified program, along with other inmates identified as being members of the "Two-Five" disruptive group, was not for punitive reasons but to ensure the safety of staff and inmates. Opp., ECF No. 67-2 at 6, citing ECF No. 64-2 at 94, unlock chrono; ECF No. 67-5, McDonald Dec. ¶67. Defendants state that the Program Status Reports and Inmate Advisory Council provided information regarding why plaintiff was placed on modified program. ECF No. 64-2 at 101, plaintiff's Dep. 18:3-8; ECF No. 67-5, McDonald Dec. ¶ 31; ECF No. 64-2 at 91-92. Moreover, they assert that plaintiff was able to challenge his placement on modified program through the inmate appeals process. MSJ, ECF No. 64-2 at 69-89.

- Plaintiff asserts that defendant Sanders was aware of plaintiff's segregation and that plaintiff was not receiving periodic reviews of his segregation and did nothing to ensure that he received the reviews required. ECF No. 64-2 at ¶ 19. Defendant Sanders, however, declares that while she was the counselor for those inmates identified as

---

of the inmate population who were identified by Facility B Staff as members or associates of the disruptive group '2-5' were placed on lockdown status based on information that was received indicating that there was a conspiracy to assault staff and other inmates."

[6] This exhibit was originally submitted, with a request to seal, as Ex. B to defendants' Motion for Summary Judgment at ECF No. 65-4. Defendants' motion was vacated and has since been re-noticed on the court's calendar. ECF Nos. 91, 95. Evidence referred to and relied on in defendants' opposition to plaintiff's motion for summary judgment which has been presented in support of defendants' dispositive motion is considered here, but only in the context of defendants' opposition to plaintiff's motion.

members or associates of the "Two-Five" gang, she had no involvement in any aspect of the modified program or in adjusting the terms of the modified program. She also lacked authority with regard to any inmate's placement in, or removal from, the modified program. ECF No. 65, Ex. J, Declaration of A. Sanders, ¶¶ 4, 6-7, 12-13. She further declares that she has no memory of having met with plaintiff, but even if she had and if he had expressed concerns about his confinement, she had no authority to help him or alter the status of his placement in the modified program. Id., ¶¶ 16-17.

- Although plaintiff did have access to a Bible, plaintiff's segregation prevented him from practicing his religion as other inmates did; he was not permitted participation in the regular services that were held in the facility chapel. His rosary was not returned to him. ECF No. 64-2 , PUF No. 20, citing ECF No. 64-2 at 105, plaintiff's Dep. 47:16-49:13. Defendants again insist plaintiff was not placed in ad seg but, instead, was subject to a modified program. ECF No. 67-2 at 7, citing unlock chrono at ECF No. 64-2 at 94. Defendants do not dispute that plaintiff was restricted from participation in group religious services, but contend that, in addition to having a Bible, he had access to a religious advisor upon request, allowing for in-cell religious study. ECF No. 67-5, McDonald Dec. ¶¶ 60-62.

- Plaintiff avers he inquired about a personal cell visit from his spiritual advisor but to no avail. ECF No. 64-2, PUF No. 21, citing ECF No. 64-2 at 105, plaintiff's Dep. 49: 19-22. Defendants insist that cell visits could be arranged upon an inmate's request. ECF No. 67-5, McDonald Dec. ¶ 61.

- Plaintiff maintains that each of the Program Status Reports from December 14, 2009 to March 9, 2010 indicate the inmates affected by the modified program status are those who participated in gang activity but that there is no evidence that plaintiff participated in any alleged gang activity on B-facility at HDSP or at any other CDCR institution. ECF No. 64-2, PUF No. 22, citing ECF No. 67-2, Ex. L at 117-126. Defendants argue again that plaintiff was identified in a confidential memorandum as being a member or associate of the "Two-Five" disruptive group. ECF No. 92, Confidential Memo, submitted under seal.

10

1            C.       Governing Due Process Principles

2            The Due Process Clause of the Fourteenth Amendment protects prisoners from the

3    deprivation of life, liberty or property without due process of law.  Wolff v. McDonnell, 418 U.S.

4    539, 556 (1974).  However, "that prisoners retain rights under the Due Process Clause in no way

5    implies that these rights are not subject to restrictions imposed by the nature of the regime to

6    which they have been lawfully committed."  Id.  The Ninth Circuit has recognized the Supreme

7    Court's holding that "procedural protections adhere only where the deprivation implicates a

8    protected liberty interest-that is, where the conditions of confinement impose an 'atypical and

9    significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Brown v.

10   Oregon Dept. of Corr., 751 F.3d 983, 987 (9th Cir. 2014) (quoting Sandin v. Conner, 515 U.S.

11   472, 484 (1995)).

12           To prevail on a claim of a due process violation plaintiff must first prove that he suffered

13   "a deprivation of a constitutionally protected liberty or property interest."   Brewster v. Bd. of

14   Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.1998).  Second, he must show

15   he was denied adequate procedural protections.  Id.  Liberty interests may arise from the Due

16   Process Clause or from state law, but the Due Process Clause itself does not confer on inmates a

17   liberty interest in avoiding more adverse conditions of confinement.  Wilkinson v. Austin, 545

18   U.S. 209, 221-222 (2005).

19           While states may in some circumstances create liberty interests entitled to protection

20   under the Due Process Clause, such

21                    interests will be generally limited to freedom from restraint which,
                      while not exceeding the sentence in such an unexpected manner as
22                    to give rise to protection by the Due Process Clause of its own
                      force, see, e.g., Vitek, 445 U.S., at 493, 100 S.Ct., at 1263-1264
23                    (transfer to mental hospital), and Washington, 494 U.S., at 221-222,
                      110   S.Ct.,   at   1036–1037   (involuntary   administration   of
24                    psychotropic drugs), nonetheless imposes atypical and significant
                      hardship on the inmate in relation to the ordinary incidents of prison
25                    life.

26   Sandin v. Conner, 515 U.S. 472, 483-484 (1995); see also, Mitchell v. Dupnik, 75 F.3d 517, 522

27   (noting Sandin's re-focus of the test for existence of a liberty interest "away from the wording of

28

                                                    11

prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to 'the basic conditions' of life as a prisoner.").

D.     Discussion

Plaintiff argues that he has a liberty interest arising from his subjection to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" by the restrictive conditions he was compelled to endure during his segregation, entitling him to due process protections. ECF No. 64-1 at 4-6 (quoting Sandin, 515 U.S. at 484). Defendants counter that plaintiff has not produced evidence that he was placed in ad seg, and assert that plaintiff had no protected liberty interest with respect to having been placed in a modified program for over seven months. ECF 67 at 5.

It is undisputed that plaintiff did not receive a hearing within 72 hours of his segregation or placement in a modified program, was provided no notice of ad seg placement and was not informed of the reasons for his segregation or modified program placement before it occurred. His only avenue to challenge his detention was by way of the appeals process. Among the conditions of his confinement were that he was not permitted outdoor exercise for a seven-month period, access to canteen or packages or law library access. He also was not allowed to participate in group religious activity.

Defendants rely on Hayward v. Procunier, 629 F.2d 599, 601-602 (9th Cir. 1980), in which the Ninth Circuit held that inmates had no protected liberty interest in avoiding a prison-wide lockdown that continued for an extended period of time. In Hayward, the plaintiffs were seeking procedural safeguards in response to a prison-wide lockdown affecting all inmates rather than any specific prisoner or class of prisoners. Id. at 601. Here, plaintiff and other suspected members or associates of the "Two-Five" disruptive group were isolated from other inmates in Facility B and placed under a separate, more restrictive program. ECF No. 64-2 at 13-15. The inmates in Hayward argued that they were denied the right to challenge whether the conditions of the lockdown of the entire prison population were justified by the prison emergency. Hayward, 629 F.2d at 601. Here, plaintiff seeks to distinguish his situation by asserting that he has a liberty

12

1   interest in not being separated from the general population on a restricted program without

2   adequate procedural safeguards, an does not challenge the legitimacy of the restricted program

3   itself.  ECF 64-1 (MSJ) at 4; ECF No. 78 (Reply).  But plaintiff fails to establish conclusively that

4   he was individually placed in ad seg as a disciplinary measure absent due process, rather than

5   subject to lockdown for institutional safety and security reasons as part of a group of inmates

6   associated with a disruptive group implicated in incidents of violence.  He does not establish that

7   the due process requirements that apply to individual prison disciplinary actions also apply to

8   placement in a unit with restrictive program modification.  Hayward indicates otherwise.

9        The Ninth Circuit held in Hayward that the increased security of a five-month lockdown

10   for prisoners therein was a foreseeable consequence of a criminal conviction, and, as such, it was

11   not an atypical and significant hardship:

12
13
14
15
16
17
18
19
> We do not find here the equivalent of a statute conferring a
> particular benefit, such as good behavior time or parole, with a
> specification of conditions under which that benefit can be lost. See
> Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
> (1974); Greenholtz v. Inmates of Nebraska Penal and Correctional
> Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The
> regulations here do not purport to enumerate specific reasons for
> which a prisoner can be placed in solitary confinement and to
> require documentation of those reasons. See Wright v. Enomoto,
> 462 F.Supp. 397 (N.D.Cal.1976), aff'd mem., 434 U.S. 1052, 98
> S.Ct. 1223, 55 L.Ed.2d 756 (1978). Nor are prisoners being
> subjected to treatment wholly outside the foreseeable consequences
> of criminal conviction, such as commitment to a mental institution
> in the absence of a mental disease or defect. See Vitek v. Jones, 445
> U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

20   Hayward, 629 F.2d at 601-02.  This analysis does not turn on the fact that the lockdown at issue

21   in Hayward was institution-wide.  It applies equally to the collective lock-down of inmates in a

22   particular unit of a prison.

23        Plaintiff further challenges the basis for his restrictive placement with citation to 15 Cal.

24   Code Regs. § 3378(c)(3), which requires that an inmate's identification as a gang member rely on

25   no less than three independent source items which must be validated.  MSJ, ECF No. 64-1 at 7-9.

26   Section 3378(c)(4) also requires a minimum of three documented independent source items for an

27   inmate to be identified as a gang "associate."  Section 3378(c)(2) requires that the minimum of

28   three independent source items be in the inmate's central file and that if information if from a

1   confidential source it must meet a test of reliability as set forth in 15 Cal. Code Regs. § 3321.[7]

2   Plaintiff has not established beyond dispute, however, that these regulations apply to imposition

3   of the modified program at issue here, which is distinct from the gang validation process

4   contemplated by § 3378(c).

5          Plainly calling into question the information which led to his inclusion in the lockdown,

6   plaintiff relies on Madrid v. Gomez, 889 F. Supp.1146, 1273-74 (N.D. Cal. 1995), a pre-Sandin

7   decision, for the principle that to satisfy due process, evidence relied upon before an inmate can

8   be placed in administrative segregation must have "'some indicia of reliability."  ECF No. 64-1 at

9   7.  It is undisputed that plaintiff was not validated as a gang member or associate prior to his

10  modified program placement.  Defendants argue that because plaintiff was not validated, removed

11  from general population or placed in administrative segregation as a gang member or associate,

12  due process protections were not invoked.  ECF No. 67-6.[8]  Rather, defendants contend that

13  plaintiff was placed on lockdown or modified program because he was identified as included

14  within a group of inmates who were part of the "Two-Five" disruptive group and, upon his having

15  signed an unlock agreement stating that he would not take part in gang activity, he was returned

16  to normal programming.  ECF No. 67-4 at 6.  Accordingly, defendants maintain that plaintiff was

17  not entitled to the protections under Madrid v. Gomez, 889 F.Supp. at 1276 (requiring an informal

18  hearing when an inmate is validated and placed in administrative segregation) or Toussaint v.

19  McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986)  (requiring "some evidence" prior to placement in

20  segregated confinement).[9]

21  _____

22  [7] 15 Cal. Code Regs. § 3321(c): "A confidential source's reliability may be established by one or more of the following criteria: (1) The confidential source has previously provided information

23  which proved to be true. (2) Other confidential source have independently provided the same information. (3) The information provided by the confidential source is self-incriminating.

24  (4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources. (5) The confidential source is the victim."

25  [8] Defendants also correctly contend that this case does not proceed on due process claims

26  associated with plaintiff's allegations related to gang validation.  See Order, ECF No. 9 at 4.

27  [9] Toussaint , 801 F.2d at 1100, overruled in part by Sandin, 515 U.S. 472, found due process for administrative segregation placement was satisfied by "an informal nonadversary hearing within a reasonable time after prisoner is segregated, informing the prisoner of the reasons for considering

28  segregation, and allowing prisoner to present his views").

1    There are two hurdles that plaintiff's motion does not overcome.  First, plaintiff's

2    evidence does not conclusively establish that he was entitled to the due process protections of

3    Wolff (notice, opportunity to present evidence at hearing, written statement of findings) with

4    respect to his confinement pursuant to the lockdown at issue.   The evidence plaintiff has

5    produced does not establish that he was subject to a punitive individualized form of

6    administrative segregation without notice.[10]  Plaintiff's own evidence indicates that the

7    confinement was a precautionary measure involving an entire group taken after violent incidents

8    associated with members of the group occurred as a result of violence in B yard.

9    Second, defendants' exhibit in the form of a confidential memo demonstrates that an

10    informant supplied information regarding an alleged association by plaintiff with the Two-Fives.

11    ECF No. 92 (filed under seal).  Although plaintiff contends that he did not receive written notice

12    of the investigation, he nevertheless acknowledged in his deposition that he (like others in Facility

13    B) was provided notice of the investigation and the reason for his confinement by the Program

14    Status Report that was posted next to the Facility B showers.  ECF No. 64-2 at 101, plaintiff's

15    Dep. at 18:3-8.  According to plaintiff, the Program Status Reports informed him that "inmates

16    who [were] identified as having participated in gang activities" were to be moved to Facility B

17    "along with other inmates that ha[d] been identified with gang activities."  ECF No. 64-2 at 101,

18    plaintiff's Dep. at 18:9-17.   Plaintiff's own exhibits thus establish that that he was afforded

19    notice of the investigation into gang activity, an opportunity to be heard at three levels of appeals,

20    and notice of the findings of these appeals.

21    Plaintiff, as the party who bears the burden of proof at trial, has not established his

22    entitlement to summary judgment on his due process claim.  Torres Vargas, 149 F.3d at 35 (party

23    with burden of proof must provide evidence that is conclusive on a dispositive issue).  Moreover,

24    defendants' evidence in opposition raises a genuine issue of material fact as to the nature of

25    _____

26    [10] Plaintiff's evidence regarding deprivation of exercise and limitations on religious practice does
not conclusively establish significant and atypical hardship within the meaning of Sandin, supra.

27    (As previously noted, plaintiff does not seek summary judgment here on his claims under the
Eighth or First Amendments.)  Moreover, even if plaintiff can establish the existence of a liberty

28    interest, he has not established that the process he received was constitutionally defective.

1    plaintiff's placement and as to the process due.

2          For all these reasons, plaintiff's motion for summary judgment based on a violation of his

3    due process rights should be denied.

4    III.   Eighth Amendment Claim: Defendant Clark

5          A. Undisputed Facts

6    •   Whenever an inmate submits a Health Care Services Request form, a registered nurse has

7        to review the request to determine medical priority.

8    •   Defendant Clark interviewed plaintiff on April 28, 2010 with regard to plaintiff's medical

9        issues.

10   •   Defendant Nurse Clark is supposed to process and sort all sick call appointment requests,

11       which is 60% of his essential functions.

12   •   Plaintiff submitted medical request forms in order to receive medical treatment for his

13       complaint.

14   •   Building 2 had a triage set up in order to see and treat inmates for their medical concerns.

15   •   Plaintiff complained about "stomach flu-type symptoms" to his cellmate Alfredo

16       Gomez.  MSJ, Gomez Declaration, ECF No. 64-2 at 143-144.

17   •   There was a makeshift triage center for inmates needing medical attention in the building

18       where plaintiff was being segregated.

19   •   Plaintiff submitted three Health Care Services Request forms, the first on February 22,

20       2010, the second on March 23, 2010, and finally on April 20, 2010.  However, defendant

21       Clark did not personally interview plaintiff until April 28, 2010.

22         B.  Disputed Facts

23   •   Plaintiff contends an inmate who submits a Health Care Services Request form is to be

24       seen within 24 hours.  ECF No. 64-2, PUF No. 26, citing ECF No. 64-2 at 131-132, Ex. N,

25       defendant Clark's response to plaintiff's Req. for Adm., Set Two, No. 6.  In response to the

26       request, without waiving objections, defendant Clark admits that Health Care Services

27       Request forms submitted by an HDSP inmate in 2010 were "generally" to be evaluated

28       within twenty-four hours by a registered nurse.  However, defendant Clark asserts the

caveat that, depending on the date of the submission (weekend/holiday) and custody and security needs, it was not always possible for an inmate to be seen within 24 hours.  ECF No. 67-2 & id.  In his declaration, defendant Clark avers that he did not see the February 22nd Health Care Services Request until March 18, 2010 and that a different registered nurse reviewed it initially on Feb. 23, 2010.  ECF No. 67-4, Declaration of J. Clark ¶¶ 5-6.

• Defendant Clark contends that since the health concerns plaintiff expressed in his February 22, 2010, Health Care Services Request form were not an emergency situation, he believed that they would be better addressed by the primary care physician at plaintiff's upcoming March 26, 2010 appointment.  ECF No. 67-1 at 1, Defendants' Statement of Disputed Facts, citing ECF No. 67-4, Clark Dec. ¶ 8.

• Defendant Clark reviewed plaintiff's February 22nd request on March 18th.  Because it was indicated that plaintiff's stomach complaint may have been caused by something he ate and plaintiff had not submitted a second request about his stomach, Clark believed that plaintiff's health concerns were likely resolved.  Defendant Clark therefore did not believe it necessary to schedule an appointment earlier that the March 26, 2010 appointment.  ECF No. 67-4, Clark Dec. ¶¶ 9, 10.

• Defendant Clark reviewed a second Health Care Services Request form dated March 23, 2010, on March 26, 2010, complaining again of stomach cramps and diarrhea, but since plaintiff was scheduled to see his primary care physician that same day, defendant Clark believed the doctor was better suited to address plaintiff's health concerns, Clark did not believe it was necessary to schedule plaintiff for an appointment with himself as well. Moreover, plaintiff sought to have his irritable bowel medication renewed and defendant Clark, as a registered nurse, could neither prescribe nor renew medications, so it was appropriate for plaintiff to be seen by primary care physician.  ECF No. 67-4 at ¶¶ 11-13[11]; ECF No. 67-3, Declaration of Bruce P. Barnett, M.D., Board-Certified in Family Medicine

---

[11] Defendant Clark declares that a copy of plaintiff's respective Health Care Services Request Forms, dated February 22, 2010, March 23, 2010 and April 20, 2010, are attached to his declaration, respectively, as Exhibits A, B and C (Clark Dec. ¶¶ 4, 11, 14), but there are no attachments to the Clark declaration in the record before this court.

1 and employed by CDCR as Chief Medical Officer in the Receiver's Office, ¶¶ 1-2, 12.

2 • According to non-party Dr. Barnett, nothing in plaintiff's Unified Healthcare Record

3  (UHR) indicates that defendant Clark interfered to prevent the March 26th appointment

4  from occurring.  ECF No. 67-3, Barnett Dec. ¶ 8.

5 • Dr. Barnett declares that there is nothing in the UHR that Clark was aware of any serious,

6  unresolved abdominal complaints until plaintiff's third Health Care Services Request form

7  submitted on April 20, 2010 wherein plaintiff "complains of crippling bouts of stomach

8  pain" and diarrhea.  Barnett Dec. ¶¶ 14-15.

9 • During defendant Clark's examination of plaintiff on April 28, there was no indication that

10  plaintiff was seriously ill or crippled.  Defendant Clark wrote of plaintiff's history of

11  irritable bowel syndrome which had been treated with dicyclomine and noted that

12  plaintiff's bowel sounds, bowel movement, vital signs were normal, and that the exam was

13  otherwise unremarkable.  ECF No. 64-2 at 141 (copy of plaintiff's April 20, 2010 Health

14  Care Services Form, completed by defendant Clark on April 28, 2010); ECF No. 67-3,

15  Barnett Dec. ¶ 18.

16 • Dr. Barnett notes that defendant Clark appears to have consulted with Physician Assistant

17  Miranda to issue a refill of fiber tablets and ordered fecal occult blood testing, while

18  defendant Clark declares he consulted with plaintiff's primary care physician.  Barnett Dec.

19  ¶ 19; Clark Dec. ¶ 16.[12]

20 • Both Dr. Barnett and defendant Clark aver that Clark did not have the authority to

21  prescribe medication or to reissue expired prescriptions; Dr, Barnett avers that Clark was

22  therefore neither responsible for the decision to prescribe fiber tablets or for any side

23  effects plaintiff may have experienced.  Barnett Dec. ¶ 23; Clark Dec. ¶ 17.

24  C.  Eighth Amendment Standards Regarding Inadequate Medical Care

25   In order to state a §1983 claim for violation of the Eighth Amendment based on

26 inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

27

28 [12] The report itself has a notation of "PCP Miranda."  ECF No. 64-2 at 141.

1  deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

2  To prevail, plaintiff must show both that his medical needs were objectively serious, and that

3  defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299

4  (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992). The requisite state of mind for a

5  medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992).

6         A medical need is serious when "failure to treat a prisoner's condition could result in

7  further significant injury or the unnecessary and wanton infliction of pain." <u>Jett v. Penner</u>, 429

8  F.3d 1091, 1096 (9th Cir.2006) (internal quotation marks and citations omitted). The following

9  situations indicate that a prisoner has a serious need for medical treatment: the existence of an

10  injury that a reasonable doctor or patient would find important and worthy of comment or

11  treatment; the presence of a medical condition that significantly affects an individual's daily

12  activities; or the existence of chronic and substantial pain. <u>See, e.g.</u>, <u>Wood v. Housewright</u>, 900

13  F. 2d 1332, 1337-41 (9th Cir. 1990) (citations omitted); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-

14  01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on

15  other grounds, <u>WMX</u> <u>Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

16         In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very

17  demanding standard for "deliberate indifference." Negligence is insufficient. <u>Farmer</u>, 511 U.S.

18  at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

19  which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

20  violation. <u>Id.</u> at 836-37. It is not enough that a reasonable person would have known of the risk

21  or that a defendant should have known of the risk. <u>Id.</u> at 842. Rather, deliberate indifference is

22  established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

23  inmate health and safety." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

24  citation omitted) (emphasis added). Furthermore, mere differences of opinion concerning the

25  appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v.</u>

26  <u>McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

27         D.  <u>Discussion</u>

28          It is undisputed that plaintiff submitted three Health Care Services Request forms, the first

on February 22, 2010, the second on March 23, 2010, and the third on April 20, 2010.  In his first request for treatment, plaintiff complains of stomach flu and diarrhea symptoms that may have been caused by something he ate.  ECF 64-2 at 139.  About a month later, in his second request, he describes "experiencing reoccurring bouts" of stomach pains, irregularity, and diarrhea "on and off over the last month."  ECF No. 64-2 at 140.  He states that he needs his I.B.S. medication re-issued and perhaps to see a gastroenterologist.  Id.  By his third request, approximately two months after the initial request, plaintiff states that he was "continuing to experience crippling bouts of stomach pains," cramps, and diarrhea, which were limiting his ability to function properly.  ECF No. 64-2 at 141.  Plaintiff also supplies evidence, via an affidavit from his cellmate at the time, that the pain from his illness prevented plaintiff from performing the normal tasks of in-cell cleaning and washing his clothes and sheets.  Moreover, the cellmate describes watching plaintiff "lay in bed on a regular basis until his symptoms subsided."  ECF No. 64-2 at 143.  Finally, the report from defendant Clark's examination of plaintiff on April 26, 2010, shows that he had lost 10 pounds in the past six months.  ECF 64-2 at 141.

Plaintiff's evidence may be sufficient to meet his burden that he suffered from a serious medical need.  See Parameter v. Pena, No. C–96–926 THE, 1997 WL 118263, at *2 (N.D. Cal. Mar. 4, 2007) (finding that a prisoner plaintiff's diarrhea was arguably a serious medical need because of the significant effect it had on plaintiff's daily activities); Gonzalez v. Ahmed, No. C 10–5654 LHK, 2012 WL 3987583 at *6 (N.D. Cal. Sep. 11, 2012) (finding that plaintiff's severe abdominal pain, nausea and loss of appetite constituted a serious medical need).

However, on summary judgment the evidence must be viewed in the light most favorable to the nonmoving party and plaintiff's evidence does not establish conclusively that defendant Clark was deliberately indifferent to his condition.  The parties agree that defendant Clark did not personally interview plaintiff until April 28, 2010.  However, in his declaration, Clark has indicated that he did not see the initial February 22, 2010 health care request until March 18, 2010 and that when he did he believed plaintiff's complaint may have resolved.  Further, Clark has declared his belief that plaintiff's complaint would be better addressed by the primary care physician at plaintiff's upcoming March 26, 2010 appointment.  Clark reviewed plaintiff's second

1   Health Care Services Request form, dated March 23, 2010, on the day of the previously

2   scheduled appointment (March 26), and believed plaintiff's concerns would be addressed on that

3   date by the doctor.  In addition, defendant Clark has produced the declaration of a medical expert,

4   Dr. Barnett, who has confirmed that defendant Clark did not have the authority to renew the

5   medication prescription plaintiff sought by way of his request.  Moreover, Dr. Barnett has

6   declared that nothing in plaintiff's UHR showed defendant Clark's awareness of serious,

7   unresolved abdominal complaints prior to the third request.

8       Plaintiff contends that the two-month delay in his medical treatment while he was on

9   lockdown was caused by defendant Clark's deliberate indifference.  Reply, ECF No. 78.

10  Drawing all inferences in favor of the defendant however, as the court must on plaintiff's motion

11  for summary judgment, plaintiff has not conclusively established that Clark delayed medical care

12  with the requisite culpable state of mind.  The court may not evaluate the credibility of Clark's

13  declaration on summary judgment.  The facts regarding deliberate indifference are accordingly in

14  dispute.  Plaintiff's motion for summary judgment on his Eighth Amendment inadequate medical

15  care claim against defendant Clark should be denied.

16      Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary

17  judgment (ECF No. 64) be denied.

18      These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be filed and served within fourteen days after service of the objections.  **Due to**

24  **the exigencies of the court's calendar there can be no extension of time**. The parties are

25  ////

26  ////

27  ////

28  ////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 18, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE